WALTERS (CALDWELL v.). See Case No. 2,305.

---

## Case No. 17,123.

### WALTERS v. The RADIUS.

[Betts, Scr. Bk. 235.]

District Court, S. D. New York. Oct. 25, 1851.

SHIPPING — FASTENING VESSELS IN SLIP — LARGE VESSEL CRUSHING SMALL ONE.

[A large vessel which places herself outside a small one, in a slip, has no right to remain there, or to refuse to let the small one out, when the weather becomes such as to cause danger of crushing the latter, there being plenty of room for a safe berth further along the pier. Nor can the large vessel excuse herself on the ground that, in order to slack her lines to let

the small one out, it would be necessary to run a line across the slip temporarily, which is forbidden by ordinance; for the spirit of the ordinance would not be violated in such an emergency.]

[This was a libel by Joseph Walters against the brig Radius to recover for the loss of the schooner Splendid.]

JUDSON, District Judge. The two vessels in controversy are the schooner Splendid, Augustus Chevalier, master, and the brig Radius, Solomon D. McGraff, master. The damage, which is the subject-matter of the libel, was the total loss of the schooner, on the 22d day of December, 1849, under the following circumstances: Pier 39 East river is 344 feet long; the short pier on the south side, 192 feet long, and the breadth of the slip between them is 211 feet. On the morning of the 22d December, 1849, the brig Radius and two other vessels lay at the inner end of the slip, and the schooner Splendid in the same slip, within almost 50 feet of the foot of the pier. The schooner measured 23 tons, and the brig 200 tons and over. The length of the schooner was 34 feet, and the length of the brig 125 feet. Both vessels were made fast to the spiles in the usual way; and at 9 o'clock in the morning the Radius let go her fastenings, and, with a view of going out by the aid of a steam tow, she hauled down the slip to the position of the schooner, and made fast directly opposite the schooner, covering the same between herself and the pier, with the lines of the brig running to the spiles fore and aft the schooner. The master of the schooner then inquired how long the brig expected to lay in that position, when Capt. McGraff replied, "But a short time only,—waiting for a steamer to take him in tow." Thus far all is right, and for that purpose the brig had a perfect right to place herself conveniently for the approach of the steamer. Towards noon the steamer came, but the tide did not serve, and the weather began to be lowery; and at 12 o'clock Capt. McGraff concluded not to leave the slip until Monday morning, the 24th, and then he left the Radius in the care of a ship keeper, and went, as he says, to countermand his order to the steamer until Monday, leaving the Radius made fast, as at first, without giving the schooner any notice that his position was to remain unchanged until Monday. Here the case assumes an important aspect; and from this time the acts of the parties become decisive of the controversy. The master of the schooner being absent, the charge of her remained with his mate. In the afternoon of Saturday, while the storm was increasing, Captain McGraff returned to the vessel, when the mate of the schooner requested him to slack his bow line and permit the schooner to pass out. This request is sworn to by the schooner's mate; and Capt. McGraff also swears to the same fact, as an admission of its truth, but he adds, that he could not let the schooner out with safety to the brig. The case may be narrowed down to this single

point; for, up to this period, no damage had occurred to the schooner. We are now to inquire into the cause of the damage; where the blame is to rest, and how far the justification set up by the respondent can avail him for having destroyed the schooner. Nothing short of justification can answer the issue. To use the impressive language of one of the witnesses, the schooner was smashed by the brig, and she went down. If the brig had not taken her new position, if she had occupied it only for a temporary purpose, if she had let the schooner out as requested, then the loss would not have occurred. There is no ground or pretence that the schooner was in the wrong, or that she could escape from the fastenings fore and aft, placed there by the brig, without the consent of the brig. The brig is the active instrument of the destruction of the schooner, and it is not too much to say that the respondent must show a legal justification.

The burden of proof now rests with the brig. Here we have the justification:

1. The respondent claims that the brig could not have been hauled out or in at all, because of the gale. The proof on this point entirely fails; and there is neither question nor doubt but what the brig might, with safety to herself, at all times between twelve and four o'clock, have been moved from her new position, to as safe a position for herself, ahead of the schooner. There was room enough in the slip; and, as the storm and danger approached, the master was legally bound to do so, and in the omission of that obvious duty he was guilty of gross negligence.

2. The mate in charge of the schooner, about 4 o'clock, made a request that the captain of the brig would slack his bow line, and let the schooner out. Capt. McGraff admits this request to have been made to him when he was on board the brig, about 4 o'clock; that he refused to do so; and assigns as the cause of his refusal that this maneuver would endanger the brig. This act of the master of the brig places him in a still greater wrong. The brig had a stern line made fast to the pier aft the schooner, which held her, while her bow line was slack, but not enough so to let the schooner haul ahead. All that was required to relieve and save the schooner was to give that line slack enough to let the schooner pass over it, and then both lines of the brig might have been taut, and the brig would have been more safe than before. I see neither excuse nor apology for this neglect of plain and positive duty. But the respondent claims this could not be done, for a special reason. To accomplish that, he must have run a line from the bow of the brig, across the slip to the opposite pier, and made fast there, which could not be done, for the additional reason that a city ordinance prohibited such an act, under a penalty of ten dollars. Rev. Ord. p. 342, § 4. "No person shall place any cable, rope, chain or line across the entrance of any slip, under the penalty of ten dollars." It is urged here,

that this ordinance is positive in its character, and the master would have subjected himself to the penalty had this been done, even to relieve and save the schooner. This construction of the ordinance is too technical for the case in question. In construing all laws, we are to consider the object, the mischief, and the remedy. This ordinance was designed to prevent obstructions to the free passage of vessels into slips. There was, at the time, no approaching vessel to be obstructed; and, moreover, the schooner was in imminent danger of destruction, and that imperious necessity would have been justified by the spirit of the ordinance. The case cited by counsel does not sustain the construction urged.

3. We have the respondent's own view of the case, in the defence assumed. It is simply this: The master of the brig had a lawful right to leave his original position in the slip, and make fast on the outside of the small schooner, as he did in this case. and possessing that right, and having exercised it lawfully, the law justifies his remaining there, under all circumstances; that the maritime law will not oblige him to move his brig, at the expense of a single dollar, or even to the hazard of that sum. To sustain this position, witnesses were called in to show that large vessels were frequently made fast outside of small craft, and that it was lawful and customary to do so. Whatever moral duty and obligation might indicate, still there was no legal obligation which would compel its performance. The court has been called upon to apply these principles to this case, and sanction their application, by a decree against the libel. The court is not aware of any such rulings in the admiralty practice. The claim is much too broad. Rather would we say that the law of navigation carries with it a more reasonable and equitable spirit. Rather would we say that a master of a ship should understand that, in case of imminent danger to another ship, it is his duty to do all in his power to avoid the injury, especially when his own acts constitute the only danger in the case. The respondent has not only neglected plain duty, but has illegally and wrongfully been the means of the destruction of the schooner Splendid, without fault of the other party. The decree will be for the libellant, with reference to ascertain the damages.